IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 5:19-cr-00025-002 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| NORMA L. KIDWELL | ) | United States District Judge |

**MEMORANDUM OPINION AND ORDER**

On January 20, 2022, Norma Lynda Kidwell filed a motion for compassionate release. (Dkt. No. 331.) The court appointed the Federal Public Defender to represent Kidwell, but it declined to supplement her motion other than to note Kidwell's vaccination status. (Dkt. No. 348.) Despite being granted additional time to respond, the government filed no response.

For the reasons stated below, Kidwell's motion for compassionate release will be denied.[1]

I. BACKGROUND

In 2019, Kidwell was charged by a federal grand jury in a multi-count, multi-defendant indictment. The indictment charged that Kidwell knowingly and intentionally possessed with the intent to distribute a mixture and substance containing detectable amounts of heroin, acetyl fentanyl, and fentanyl, the use of which resulted in the death of J.H. and the serious bodily injury of J.W. Kidwell was also charged with conspiracy to distribute the same substances. Kidwell pleaded guilty in 2020. In 2021, the undersigned judge sentenced Kidwell to 100 months of incarceration followed by five years of supervised release, and she is serving her sentence at Alderson FPC with a release date of June 25, 2028.[2]

---

[1] Kidwell has also filed a motion under 28 U.S.C. § 2255. (Dkt. No. 322.) The court will address this motion in a separate order.

[2] *See* https://www.bop.gov/inmateloc/ (last visited June 1, 2022).

During the timeframe of June 2017 to December 2017, Kidwell and her husband, Craig Kidwell, traveled regularly to Maryland and obtained controlled substances. Around December 2017, Kidwell and her husband sold James Lichliter approximately one-half ounce of a mixture of heroin, fentanyl, and acetyl-fentanyl. Lichliter then sold ten packets of the controlled substance to Stacey Marston. On December 22, 2017, Marston sold three packets to Jonathan Neice, a co-worker. Shortly thereafter, Neice distributed two packets of the controlled substances to J.H., who in turn gave one of the packets to J.W. Both J.H. and J.W. ingested the controlled substances and overdosed as a result. J.H. died from the overdose, while J.H. survived.

A search of Kidwell's home uncovered drug paraphernalia, including paper packets and a metal spoon which contained traces of heroin, fentanyl, and acetyl-fentanyl. Officers also seized the cellphones of Kidwell and her husband. Text messages on the cellphone corroborated their purchase and delivery of drugs to Lichliter that ultimately led to the overdoses of J.W. and J.H.

Kidwell, who is 57 years old, requests early release due to the presence of COVID-19 where she is incarcerated. Kidwell, without providing medical records, states that she has COPD and failed her second breathing test and that they would not give her the results. She also notes that her husband, who is also incarcerated, is having certain health issues due to a pulmonary embolism. In its notice of no supplemental filing, the FPD represents that Kidwell has received the COVID-19 vaccine. (Dkt. No. 348.) Currently, Alderson FPC reports no COVID-19 positive inmates and one COVID-19 positive staff member.[3]

---

[3] *See* https://www.bop.gov/coronavirus (last visited June 1, 2022).

II.  ANALYSIS

**A.  Compassionate Release Under the First Step Act**

United States Code Title 18, Section 3582(c)(1)(A), as amended by the First Step Act and in pertinent part, provides that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

Thus, after considering any applicable § 3553(a) factors, if the court finds extraordinary and compelling reasons warrant a reduction and if it finds a reduction consistent with any applicable Sentencing Commission policy statements, it may reduce a term of imprisonment.  However, "the Commission has yet to issue a policy statement that applies to motions filed by defendants [rather than motions filed by BOP] under the recently amended § 3582(c)(1)(A)." *United States v. Burnell*, 837 F. App'x 223, 224 (4th Cir. 2021) (quoting *United States v. McCoy*, 981 F.3d 271, 280–83 (4th Cir. 2020)).  *See also United States v. Hargrove*, 30 F.4th 189 (4th Cir. 2022). The court, may, nonetheless, look to U.S.S.G. § 1B1.13 for guidance.  *McCoy*, 981 F.3d at 282 n.7.

Because section 1B1.13 provides guidance and the Fourth Circuit has noted that it provides examples and, at least in the medical context, defines "the same substantive term that

3

applies to BOP-filed motions," *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), the court notes the guidance from that section. Section 1B1.13, regarding medical conditions, notes terminal illness and conditions from which a defendant is not expected to recover that substantially diminish defendant's ability to care for himself in a correctional facility (including serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process). Of course, this guidance is not controlling. But, because there is no policy statement regarding motions filed by defendants under the recently amended § 3582(c)(1)(A), a court may "consider *any* extraordinary and compelling reason for release that a defendant might raise." *United States v. Burnell*, 837 F. App'x 223, 224 (4th Cir. 2021) (quoting *United States v. McCoy*, 981 F.3d 271, 280–83 (4th Cir. 2020)).

"A defendant seeking compassionate release has the burden of establishing that such relief is warranted." *United States v. Ferguson,* No. 515CR00018KDBDSC1, 2020 WL 5300874, at *2 (W.D.N.C. Sept. 4, 2020). *See also Hargrove,* 30 F. 4th at 195 (noting the information provided by the inmate "to carry his burden of demonstrating that his medical conditions served as an extraordinary and compelling reason for release."); *United States v. Brewington*, 2019 WL 3317972, at *2 (W.D. Va. July 24, 2019). *See also United States v. Weaver*, No. 1:17-CR-235, 2020 WL 4810123 (E.D. Va. Aug. 18, 2020) (citing *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56-57 (2005) (defendant bears burden as party seeking relief absent statutory guidance to the contrary)). Compassionate release is "an extraordinary and rare event." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019). Rehabilitation, standing alone, "shall not be considered an extraordinary and compelling reason" for a sentence modification. 28 U.S.C. § 994(t).

### B. Exhaustion

Pursuant to the exhaustion requirement, an inmate is required to either fully exhaust all administrative remedies or show the lapse of 30 days from receipt of the request by the warden, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). Under the first condition, if the warden denies the request within 30 days, the inmate then must exhaust his or her administrative remedies. The second method of exhaustion is only available if the warden fails to respond within 30 days. *See, e.g., United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *United States v. Gomez*, No. 1:17CR71-1, 2021 WL 3612269 (N.D. W. Va. Aug. 13, 2021); *United States v. Jones*, No. 5:13-cr-00025, 2021 WL 32883555 *2 (W.D. Va. Aug. 2, 2021).

The court has no information about whether Kidwell exhausted all available administrative remedies. Even if Kidwell has satisfied the exhaustion requirement, her motion is denied for the reasons stated in the rest of this opinion.

### C. Extraordinary and Compelling Reasons

The fact that COVID-19 exists and that there is a possibility that someone may contract it in a prison is insufficient, in and of itself, to grant a motion for compassionate release. *See Raia*, 954 F.3d at 597. Rather, in the context of COVID-19,

> the threshold questions are whether [the inmate] has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See High*, 997 F.3d at 185 (explaining that arguments for compassionate release "based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19").

*United States v. Youngblood*, 858 F. App'x 96, 98 (4th Cir. 2021).

Kidwell represents that she suffers from a health condition, COPD, that makes her more likely to get very sick from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-

extra-precautions/people-with-medical-conditions.html (last visited 4/5/22). Even so, Kidwell's risk is greatly diminished due to being vaccinated. *See, e.g.*, *United States v. Gerald*, No. 5:18-CR-204-D-6, 2021 WL 5283293, at *3 (E.D.N.C. Nov. 12, 2021); *United States v. Sidhu*, Criminal Case No. 1:14-cr-00399 (RDA), 2021 WL 2894723, at *5 (E.D. Va. July 9, 2021) (noting that because defendant received the COVID-19 vaccination, defendant "faces reduced risks from the virus, further weighing against his request for compassionate release"). Moreover, a risk of infection, alone, is insufficient to show extraordinary and compelling reasons. *See, e.g.*, *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); *United States v. Baeza-Vargas*, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases and noting consensus of district courts that have ruled that receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); *United States v. Luna*, No. 7:16-CR-11-D-1, 2021 WL 5828034, at *3 (E.D.N.C. Dec. 7, 2021) (collecting cases showing the "growing consensus" of district courts denying compassionate release when an inmate is vaccinated against COVID-19).

In light of the COVID-19 vaccine, courts have recognized the difficulty in proving extraordinary and compelling reasons even when an inmate has a high-risk comorbidity. *See United States v. Murphy*, Case No. 4:03-cr-70134, 2021 WL 3084922, at *2 (W.D. Va. July 21, 2021) ("Because Murphy is now fully vaccinated, the Court finds that any increased risks posed

6

by COVID-19 due to his underlying medical conditions do not constitute extraordinary and compelling circumstances."). *See e.g., United States v. Peterson*, 2021 WL 2156398, at *2 (E.D. Pa. May 27, 2021) (the defendant "suffers from hypertension, asthma, and prediabetes and he is obese and a former smoker," but "[g]iven the significant protection the [Johnson and Johnson] vaccine offers and the declining rates of COVID-19 infections in prisons, we (like many other courts) do not find that Mr. Peterson has presented extraordinary and compelling circumstances at this time.").

Given the above reasons, the lack of specific information regarding Kidwell's medical condition, and the small number of cases at Alderson FPC, Kidwell's COPD with the COVID-19 pandemic does not present an extraordinary and compelling reason for compassionate release.

### D.  Section 3553(a) Factors

Even if the court were to find that exhaustion of administrative remedies and extraordinary and compelling reasons existed, the court would nonetheless exercise its discretion to deny the motion based on the sentencing factors. The factors to consider under § 3553(a) are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . .

Kidwell's offense, dealing drugs that resulted in death and serious bodily injury, was very serious. The court did not, and will not now, ignore the consequences of Kidwell's crimes. Furthermore, she was dealing drugs, even if not for profit, for a period of six months. There is a need to punish this conduct and for general deterrence. There is also a need to promote respect for the law given the period of time that Kidwell was dealing drugs. These needs have not dissipated in the short amount of time that Kidwell has been in prison.

### III.  CONCLUSION

Based on the foregoing, it is hereby ORDERED that Kidwell's motion for compassionate release (Dkt. No. 331) is DENIED. The clerk is directed to provide a copy of this memorandum opinion and order to Kidwell, all counsel of record, and the United States Probation Office.

Entered: June 1, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge