IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 5:19-cr-00025-002 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| NORMA L. KIDWELL | ) | United States District Judge |

**MEMORANDUM OPINION**

Pending before the court is Norma Lynda Kidwell's motion for relief pursuant to 28 U.S.C. § 2255, to which the government has responded. (Dkt. Nos. 322, 349.) The court also has considered Kidwell's filing docketed as "additional evidence" (Dkt. No. 354) and the government's response thereto (Dkt. No. 357). For the reasons stated below, the court will deny Kidwell's § 2255 motion and decline to issue a certificate of appealability. The court also will deny as moot Kidwell's motion for counsel (Dkt. No. 360).

I.  BACKGROUND

In the initial indictment in this case, Kidwell and four co-defendants were charged with drug offenses. Kidwell was charged with knowingly and intentionally possessing with the intent to distribute a mixture and substance containing detectable amounts of heroin, acetyl fentanyl, and fentanyl, the use of which resulted in the death of J.H. and the serious bodily injury of J.W., in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B) (for the heroin) and § 841(b)(1)(C) (for the acetyl fentanyl and fentanyl). Kidwell and her co-defendants also were charged with conspiracy to possess with intent to distribute under 21 U.S.C. § 846 and § 841(a)(1).

After three of the other defendants had pled guilty, Kidwell and her husband, Craig Kidwell (Craig) were charged in a two-count superseding indictment on March 17, 2020, with

the same two offenses, except they also were charged with aiding and abetting each other under 18 U.S.C. § 2, as to the possession with intent to distribute charge. (Dkt. No. 157.)

Kidwell pled guilty to both charges before United States Magistrate Judge Joel C. Hoppe, pursuant to 28 U.S.C. § 636(b)(3), on August 25, 2020. Judge Hoppe prepared a Report and Recommendation recommending that the court accept the plea of guilty, which the court did. (Dkt. Nos. 193, 199, 201, 249.)

According to a signed statement of facts submitted by Kidwell in conjunction with her guilty plea, she and Craig, in cooperation with each other and others, travelled regularly to Maryland to obtain controlled substances from June 2017 to December 2017. (Dkt. No. 199 at 2.) The drugs were for personal use and for delivery to co-defendant James Lichliter. After receiving drugs from Kidwell on one occasion, Lichliter sold ten packets of the controlled substance to Stacey Marston. (*Id.*) Marston sold three packets of the controlled substance to Jonathan Neice, a co-worker. (*Id.*) Shortly thereafter, Neice distributed two packets of the controlled substance to J.H., who in turn gave one of the packets to J.W. (*Id.* at 1–2.) Both J.H. and J.W. ingested the controlled substances distributed by Neice and overdosed as a result. J.H. died of the overdose, and J.W. survived. (*Id.*) The cause of J.H.'s death and J.W.'s serious bodily injury was toxicity from the drugs ingested by them and distributed by Neice. (*Id.*)

A search of Kidwell's home revealed drug paraphernalia, including paper packets and a metal spoon which both contained traces of heroin, fentanyl, and acetyl-fentanyl. (*Id.* at 2.) A search of Kidwell and Craig's cellphones revealed text messages which corroborated their purchase and delivery of drugs to Lichliter that led to the overdoses of J.W. and J.H. (*Id.* at 3.)

In her written plea agreement, Kidwell waived her right to appeal and to collaterally attack her sentence. (Dkt. No. 201 at 7–8.) Kidwell's plea agreement also expressed satisfaction

with her attorney; willingly stipulated facts sufficient for conviction; and indicated she had read the plea agreement in its entirety and understood each provision. (*Id.* at 11–13.) The plea agreement also stated that she was pleading guilty because she was "in fact guilty" and because she believed it was in her best interest to do so, and not because of any threats or promises. (*Id.* at 2, 13.)

At her plea hearing, Kidwell admitted under oath to committing the charged offenses via a detailed statement of facts, as discussed. The transcript of the plea colloquy also reflects that Kidwell testified, under oath, that she had been given adequate opportunity to discuss the charges and her case with her attorney and that she was "fully satisfied" with her attorney's representation of her. (Guilty Plea Tr. 9, Dkt. No. 339.) With regard to the plea agreement, she testified that she had signed it and initialed each page. (*Id.* at 10.) Before doing so, she read "every bit" of the plea agreement, had talked with her attorney about it, and understood its terms. (*Id.* at 10–11.) She further testified that no one had threatened her or forced her to plead guilty and that no promises were made to her, other than those made in the plea agreement or open court, to make her plead guilty. (*Id.* at 19.)

At sentencing, the court concluded that the guideline range for her offense level and criminal history would be 168 to 210 months, but because of the mandatory statutory minimum, the guideline range was 240 months. The court granted a motion for downward departure, however, and sentenced Kidwell to 100 months incarceration followed by five years of supervised release. Kidwell did not appeal.

On November 30, 2021, Kidwell filed the instant motion for relief pursuant to 28 U.S.C. § 2255. Although they are not all listed as separate grounds for relief in her motion, Kidwell's motion and supplement advance four basic claims: (1) she is suffering cruel and unusual

punishment because of the conditions of her incarceration; (2) she received ineffective assistance of counsel with respect to her decision to plead guilty; (3) a judicial conspiracy led to her sentence; and (4) she is innocent of both charges of conviction.

The government argues that some of Kidwell's claims are procedurally defaulted or are barred by her waiver of her rights to appeal and to collaterally attack her conviction or sentence. It also contends that her claims fail on their merits. As to her claim of "cruel and unusual punishment," the government argues that the Western District of Virginia lacks jurisdiction to hear Kidwell's cruel and unusual punishment claim as it relates to the conditions of her confinement at Federal Prison Camp (FPC) Alderson in the Southern District of West Virginia.

## II.  ANALYSIS

### A.  Section 2255

Under 28 U.S.C. § 2255, a movant may attack her sentence or conviction on the grounds that it was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. *Id.* § 2255(a). The movant bears the burden of proving grounds for collateral relief by a preponderance of the evidence. *Merritt v. United States*, 499 F. Supp. 3d 249, 254 (E.D. Va. 2020) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958)). In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." § 2255(b). An evidentiary hearing is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record or when a credibility determination is necessary to resolve the issue. *United States v.*

4

*Witherspoon*, 231 F.3d 923, 925–27 (4th Cir. 2000). The record in this case conclusively establishes that Kidwell is not entitled to relief, so the court may address the motion without an evidentiary hearing.

**B. Cruel and Unusual Punishment While Incarcerated**

The court addresses first Kidwell's claim that the conditions of her confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment. A defendant's challenge to the conditions of imprisonment is distinct from a challenge to the constitutionality of one's conviction or sentence. Generally, "a § 1983 suit or a *Bivens* action is the appropriate means of challenging conditions of confinement." *Rodriguez v. Ratledge*, 715 F. App'x 261, 266 (4th Cir. 2019). By contrast, claims concerning the constitutionality of one's sentence may be brought under 28 U.S.C. § 2255. *See generally* 28 U.S.C. § 2255.

Kidwell's claim of cruel and unusual punishment while incarcerated is improper under her § 2255 motion because it relates to the conditions of her imprisonment, not the validity of her conviction or her sentence. Thus, this claim is not properly raised in this § 2255 proceeding, and the court will dismiss it without prejudice.[1] By dismissing without prejudice, the court's ruling leaves open to Kidwell the possibility of bringing a civil rights action in the jurisdiction of her confinement, the Southern District of West Virginia.

**C. Claims Challenging the Validity of Her Plea**

As noted, the government argues that most of Kidwell's claims are barred because of the § 2255 waiver in her plea agreement. In order to determine the validity of that waiver, however, the court must first address the two claims that arguably call that waiver into question. The first is her claim that she received ineffective assistance of counsel during her plea negotiations. The

---

[1] Kidwell raised some of the same factual circumstances in her motion for compassionate release pursuant to the First Step Act, which the court denied. (Dkt. No. 350.)

second is her claim that there was a conspiracy among the court, the attorneys, and the Bureau of Prisons to coerce her to plead guilty. The court addresses each in turn.

### 1. Ineffective Assistance of Counsel

A viable ineffective assistance of counsel claim arises when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial did not result in a just outcome." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To succeed, a defendant must make a sufficient showing on two prongs. First, counsel's performance must have been deficient, which means that the errors were so serious that he or she was not actually functioning as "counsel" as guaranteed by the Sixth Amendment. *Id.* The level of performance is required to be "below an objective standard of reasonableness" under the prevailing norms of the legal community. *Id.* at 688.

Second, the deficient performance must have prejudiced the defense. *Id.* at 687. In the context of advice as to pleading guilty, a movant must show that "there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Kidwell argues that her attorney was ineffective by advising her to plead guilty because her attorney scared her by advising her of the twenty-year mandatory minimum associated with her charges. (§ 2255 Mot. 9, Dkt. No. 322.) She claims that as a result, she pled guilty even though she was innocent. Furthermore, Kidwell claims she "was petrified every time [she] came to Harrisonburg" and "wasn't clear on anything." (Dkt. No. 322 at 4, 9.)

These allegations fail to show any deficiency whatsoever. First of all, the mere fact that an attorney correctly advises of a mandatory minimum sentence, however frightening the prospect of that sentence may be, does not establish deficiency. Furthermore, Kidwell

confirmed—both in her plea agreement, at the guilty plea proceeding, and again at her sentencing hearing—that she was satisfied with her legal counsel. (Dkt. No. 201 at 11–12; Sent. Tr. 8, Dkt. No. 300; Plea Tr. 9, Dkt. No. 339.)

Nor was counsel's encouragement to plead guilty deficient performance. Indeed, counsel's advice to plea guilty was sound legal advice. There were cooperating co-defendants in this case, as well as physical evidence found at her home and incriminating texts on her phone, all supporting the charges against her. Moreover, by pleading guilty and providing substantial assistance, Kidwell obtained a sentence that was less than half of her mandatory minimum (100 months instead of 240 months).

Significantly, moreover, and despite her assertions that she was afraid and she felt like there was a conspiracy to get her to plead guilty despite her innocence, any such allegations are flatly contradicted by her own statements. Specifically, her sworn statements at her plea colloquy and her signed plea agreement establish that she understood her plea agreement, understood her rights, and was in no way coerced or threatened into signing her plea agreement or pleading guilty. For these reasons, she also cannot show that, absent counsel's purported deficiency, she would have proceeded to trial.

Significantly, the Fourth Circuit has instructed that, generally, a § 2255 motion that contradicts the plea colloquy should be dismissed. *See United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."); *Fields v. Att'y Gen. of State of Md.*, 926

F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representation he makes under oath during a plea colloquy.").

Kidwell contends that she had "never dealt drugs to anyone" and that she "never sold Lichliter drugs, never—he purchased his own."  (Dkt. No. 354, at 1.)  But these statements contradict her sworn statements in open court, which "carry a strong presumption of verity." *Lemaster*, 403 F.3d at 221.  And Kidwell has failed to show extraordinary circumstances to call into question her sworn statements.

To summarize, then, Kidwell's ineffective assistance claim fails on a number of grounds. First, she has not alleged deficient performance.  Second, a lack of prejudice is evidenced by both the substantial benefit she received by pleading guilty and cooperating, and her numerous statements under oath confirming that she understood the charges against her, the potential penalties, and that her decision to plead guilty was not the result of coercion or threats.  In short, there is no evidence to support that she would have gone to trial instead of pleading guilty had counsel offered different advice.

### 2. Judicial Conspiracy

With regard to her claim of a judicial "conspiracy" to get her to plead guilty, this claim fails for at least one of the same reason as her claim of ineffective assistance.  Specifically, her assertions in support of it are contradicted by her sworn testimony, which show that she was not threatened or coerced into pleading guilty, but voluntarily and knowingly entered her plea. Moreover, this claim fails for the additional reason that it consists solely of bald conclusions without any factual support.  District courts have the discretion to dismiss § 2255 claims if the defendant "stated only bald legal conclusions with no supporting factual allegations." *United States v. Robbins*, No. 2:10CR00006, 2015 WL 2194908, at *3 (W.D. Va. May 11, 2015)

(quoting *Sanders v. United States*, 373 U.S. 1, 19 (1963)). Thus, "[v]ague and conclusory allegations" may be disposed of without a hearing. *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013); *see Brown v. Peyton*, 435 F.2d 1352, 1354 (4th Cir. 1970) (disposing of petitioner's § 2255 motion based on the deficiency of the pleading, not the merits).

Kidwell's claims of judicial conspiracy are conclusory and unsupported by the record. For example, she argues there was a conspiracy "planned from the start" among the attorneys, the judiciary, and the Bureau of Prisons to persuade defendants to plead guilty. (Dkt. No. 322 at 10.) She also argues that "it is as if the federal court system [and] the BOP (Bureau of Prisons) are in business together charging 1st time offenders, drug offenders, with mandatory minimums AND threatening them to plead guilty or do 20 years." (*Id.*) Kidwell then goes on to allege that the court "had made [its] mind up on sentencing" before entering the courtroom and that Kidwell's "lawyers … did what the prosecution wanted." (*Id.* at 13).

There is no support for these allegations in the record of this case, and the allegations against the undersigned are patently untrue. As is evidenced by the sentencing transcript, the court heard testimony from Kidwell at sentencing, allowed both parties the opportunity to argue for an appropriate sentence, and heard Kidwell's allocution before imposing sentence. Indeed, when explaining the reasons for the sentence, the court noted testimony that had been elicited during the hearing. In short, nothing in the sentencing transcript supports the accusation that the sentence has been decided before the hearing. (*See generally* S. Tr., Dkt. No. 300.)

Likewise, her allegations of the BOP conspiring with prosecutors, defense attorneys, and the court are wholly unsupported by factual allegations or proof. Prosecutors alone are responsible for determining the charges they will bring against any defendant. Moreover, the twenty-year mandatory minimum that Kidwell feared is set by Congress. Additionally, it is

9

worth noting that one person died and another was seriously injured by the drugs Kidwell distributed. Charging a crime with a twenty-year mandatory minimum for such conduct is not out-of-bounds. And again, her arguments ignore that she pled guilty and stated she was doing so knowingly and voluntarily, and without being coerced.

This claim does not entitle her to relief.

### D. Actual Innocence

Having determined that Kidwell's challenges to her plea agreement are meritless, the court notes that the government argues that her judicial conspiracy claim—which the court has denied on its merits—and her only other remaining claim—her claim of actual innocence—are both procedurally defaulted and barred by the collateral attack waiver in her plea agreement.

When a defendant fails to raise an issue on direct appeal, she is said to have procedurally defaulted on that issue, meaning that "the claim may be raised in [a collateral attack] only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998). In order to show "cause" for a procedural default, a movant must demonstrate that some objective factor external to the record impeded her counsel's efforts to raise the claim. *Murray v. Carrier*, 477 U.S. 478, 492 (1986); *Turner v. Jabe*, 58 F.3d 924, 927 (4th Cir. 1995). Prejudice is defined as an error that "worked to his actual and substantial disadvantage" and was "of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Here, the court agrees that Kidwell has defaulted her "actual innocence" and "judicial conspiracy" claims because she did not appeal and thus did not preserve those issues.[2] But

---

[2] The ineffective assistance claim stands on different footing. An ineffective assistance claim generally cannot be brought on direct appeal, *United States v. Baptiste,* 596 F.3d 214, 216 n.1 (4th Cir. 2010), and thus it is not procedurally defaulted by failing to raise it on appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Additionally, an ineffective assistance claim that calls into question the validity of the plea agreement itself, as

10

because a consideration of whether the procedural default can be excused requires an examination of actual innocence in any event, the court will address Kidwell's actual innocence claim on its merits. As discussed next, her claim of actual innocence fails on the record before the court.

### 1. Possession with Intent to Distribute

Kidwell contends that she is innocent because she "never sold any drugs" and was "only dependent on them." (Dkt. No. 322 at 8.) She seems to be arguing that she did not profit from the drugs and was only a user of them. Her arguments are unpersuasive, based on the facts set forth in her agreed statement of facts and her guilty plea.

First of all, the term "distribute" means "to deliver . . . a controlled substance" and the term "deliver" means "the actual, constructive, or attempted transfer of a controlled substance . . . whether or not there exists an agency relationship." *See* 21 U.S.C. §§ 802(8), (11); *see also United States v. Washington*, 41 F.3d 917, 919 (4th Cir. 1994). Distribution under 21 U.S.C. § 841(a)(1) is not limited to the sale of controlled substances. *Washington*, 41 F.3d at 919. Sharing drugs with another constitutes "distribution" under § 841(a)(1). *Id.* (citing *United States v. Ramirez*, 608 F.2d 1261, 1264 (9th Cir. 1979)).

In *Washington*, the defendant was not involved in any way with trafficking drugs. "He did not sell drugs, and he was not a courier of drugs. He simply bought cocaine, which he planned to use himself and to share with his friends." *Id.* Even so, the court concluded that defendant's "intent to share the cocaine with others is sufficient for a court to find that he

---

Kidwell's does, must at least be considered in a 28 U.S.C. § 2255 motion, even if there was a § 2255 waiver in the plea agreement. *Cf. Lemaster*, 403 F.3d at 222 (addressing, in case with § 2255 waiver, only allegations that "implicate the voluntariness of his waiver of collateral-attack rights," including a claim of ineffective assistance during the plea). And both the appeal waiver and the collateral attack waiver in Kidwell's plea agreement contain an exception for ineffective assistance of counsel claims. (Dkt. No. 201 at 6–7.) Nonetheless, Kidwell's ineffective assistance claim fails on its merits, as already discussed.

11

possessed drugs with intent to distribute." *Id.* Similar to the defendant in *Washington*, Kidwell intended to distribute the drugs she had obtained from her trips to Maryland, and she admitted to the distribution to James Lichliter. Lichliter confirmed this, and this fact is corroborated in Kidwell's sworn statement of facts and text messages found on her and her husband's cellphones. Moreover, the evidence in the case shows that Lichliter was not the end of the distribution chain. He distributed to another (Marston), who then distributed to Neice, who gave the drugs to the victims..

Therefore, Kidwell's conduct meets the broad definition of distribution for purposes of § 841(a)(1). *See id.* (explaining that "facilitation of the sale of narcotics" was prohibited before Congress enacted § 841, whereas § 841 proscribes "distribution" of controlled substances, as opposed to "facilitation of sale. . . . Thus, in enacting the 1970 Act, Congress intended to proscribe a range of conduct broader than the mere sale of narcotics").

**2. Conspiracy to Possess with Intent to Distribute**

Similarly, as to the conspiracy to distribute charge, Kidwell contends that she "was clearly a user [,] nothing more" and that "no drugs, no money was ever found." (Dkt. No. 322 at 6.) Again, though, her argument ignores her admitted conduct and the evidence against her.

The elements of conspiracy to possess with intent to distribute a narcotic controlled substance are: "(1) an agreement to possess [narcotics] with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." *United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996); *United States v. Collazo,* 732 F.2d 1200, 1205 (4th Cir.1984). Here, the evidence supports each of these elements.

She and her husband (and Lichliter) had an agreement to possess narcotics and they intended to distribute to others (as she did, in giving drugs to Lichliter—whether sold to him or not—and as he did, in continuing the distribution). Kidwell's knowledge of the conspiracy is supported by the text messages on her phone, the information provided by co-defendants, and her own statement of facts in support of her plea. For all of these reasons, Kidwell's "actual innocence" claim fails and must be denied.

Having concluded that none of Kidwell's claims entitle her to relief under § 2255, the court will deny her § 2255 motion.

### E. Certificate of Appealability

When issuing a final order adverse to the § 2255 movant, the court must issue or deny a certificate of appealability. *See* Fed. R. Gov. § 2255 Proc. 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

The court declines to issue a certificate of appealability because Kidwell has not made a substantial showing of the denial of a constitutional right, and reasonable jurists would not find the court's assessment of her claims debatable or wrong.

Lastly, Kidwell has filed a motion for appointment of counsel. The court concludes that the "interests of justice" do not require representation for Kidwell. *See* 18 U.S.C. § 3006(a)(2). In any event, and in light of the denial of her § 2255 motion, her motion for counsel is moot.

## III. CONCLUSION

For these reasons, the court will deny Kidwell's § 2255 motion and her motion for counsel, and it will decline to issue a certificate of appealability. The court also will issue an appropriate order.

Entered: September 6, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge